Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RYAN,<br><br>            Plaintiff,<br><br>    vs.<br><br>TELENAV, INC., DOUGLAS MILLER, HP JIN, SAMUEL CHEN, WES CUMMINS, and RANDY L. ORTIZ,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff John Ryan ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Telenav, Inc. ("Telenav" or the "Company") and the members of Telenav's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Telenav will be acquired by V99, Inc. ("V99"), a newly formed entity led by Telenav's Chief Executive Officer ("CEO") and Chairman, HP Jin ("Jin"), through V99's wholly owned subsidiary Telenav99, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On November 3, 2020, Telenav issued a press release announcing that it had entered into an Agreement and Plan of Merger dated November 2, 2020 (as amended on December 17, 2020, the "Merger Agreement") to sell Telenav to V99. Under the terms of the Merger Agreement, each holder of Telenav common stock will receive $4.80 in cash for each share of Telenav common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $241 million.

3. On January 8, 2021, Telenav filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Telenav stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided to the Special Committee of the Board's ("Special Committee") financial advisor, B. Riley Securities, Inc. ("B. Riley"); and (ii) B. Riley's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Telenav's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Telenav.

9. Defendant Telenav is a Delaware corporation, with its principal executive offices located at 4655 Great America Parkway, Suite 300, Santa Clara, California 95054. The Company is

a leading provider of connected car and location-based services ("LBS"). Telenav's common stock trades on the NASDAQ Global Select Market under the ticker symbol "TNAV."

10. Defendant Douglas Miller ("Miller") has been a director of the Company since July 2015 and is a member of the Special Committee.

11. Defendant Jin is the Company's co-founder, CEO and Chairman of the Board and has been a director since October 1999. Defendant Jin is the sole stockholder, sole director and sole CEO of V99.

12. Defendant Samuel Chen ("Chen") has been a director of the Company since January 2002. Defendant Chen and Digital Mobile Venture Limited, an entity affiliated with Defendant Chen, are providing debt financing in connection with the Proposed Transaction.

13. Defendant Wes Cummins ("Cummins") has been a director of the Company since August 2016 and is a member of the Special Committee.

14. Defendant Randy L. Ortiz ("Ortiz") has been a director of the Company since October 2017 and is a member of the Special Committee.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

16. V99 is a Delaware corporation led by defendant Jin. V99 was formed on September 30, 2020, for the purpose of engaging in the transactions contemplated by the Merger Agreement.

17. Merger Sub is a Delaware corporation and a wholly owned subsidiary of V99.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

18. Telenav is a leading provider of automotive software and services providing both in-vehicle and cloud-based solutions. Over the past twenty years the Company's focus has been on

navigation and LBS, where Telenav pioneered innovations such as the market's first mobile cloud-based navigation service. Navigation and LBS are the primary applications for in-vehicle infotainment ("IVI") systems and Telenav applies its strengths and core competencies to address the growing demand for overall connected car services.

19. A leader in hybrid navigation, Telenav counts among its customers three of the top five automotive original equipment manufacturers ("OEMs") by revenue and sales — Ford, GM and Toyota.

20. In addition to navigation and LBS, Telenav's connected car platform, VIVID, delivers IVI software solutions and services that are growing in importance as consumers increasingly include digital technologies as a factor in their automobile purchase decision. Automobile manufacturers are also looking to software and connected services to build alternative and recurring revenue models beyond the sale of the vehicle. VIVID will provide OEMs a platform and a set of IVI applications to deliver an integrated and brand-specific, cloud-connected digital experience to their customers in a fast and cost-efficient manner. The Company's VIVID Nav application delivers hybrid navigation, which can provide in-vehicle navigation that is cloud connected for real-time traffic and up-to-date destinations search, but which can also function when not cloud connected, such as when driving in areas with bad cell coverage. In addition to navigation, VIVID will enable applications for in-car commerce that allow consumers to safely and easily make purchases for common items, like fuel, parking and quick-serve food and beverage. Other applications include a media player that can work with the most widely used streaming services, an interface for common car controls, like the radio, HVAC, seat and other user settings, and functions enabling smartphone integration like communications and calendar access.

21. On November 3, 2020, Telenav announced its first quarter fiscal 2021 financial results and business highlights, reporting: (i) total revenue of $69.6 million, an increase of 97% compared

with $35.4 million in the fourth quarter of fiscal 2020, and an increase of 4% compared with $66.6 million in the first quarter of fiscal 2020; (ii) services revenue of $12.8 million, an increase of 20% compared with $10.6 million in the first quarter of fiscal 2020; (iii) GAAP net income of $3.3 million, compared with a net loss of $(4.0) million for the first quarter of fiscal 2020; and (iv) adjusted EBITDA of $5.6 million, an increase of 121% compared with $2.6 million for the first quarter of fiscal 2020.  For the nine months ended September 30, 2020, revenue was $495.4 million, compared with $262.7 million in the nine months ended September 30, 2019.  Telenav was also awarded new business with two automobile OEMs in the quarter: a US-based EV manufacturer and Chinese electric vehicle maker, Nio.  Approximately 1.2 million Telenav-equipped cars were deployed into the global market during the quarter ended September 30, 2020, bringing total cumulative auto units deployed to date to 30.7 million.  Adeel Manzoor, the Company's Chief Financial Officer, commented on the results, stating, "[w]e delivered a strong top and bottom line rebound, and significantly increased adjusted EBITDA in the first quarter of fiscal 2021.  The financial results were driven by our customers' automotive plant re-openings and return to higher levels of production than the fourth quarter of fiscal 2020, including General Motors."

**The Proposed Transaction**

22.   On November 3, 2020, Telenav issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SANTA CLARA, Calif. -- Telenav, Inc. (NASDAQ: TNAV), a leading provider of connected-car and location-based services, today announced that it has entered into a definitive merger agreement to be acquired by V99, Inc., a Delaware corporation led by HP Jin, Co-Founder, President, and Chief Executive Officer of Telenav, for $4.80 per share in an all cash transaction that values Telenav at approximately $241 million. HP Jin, Samuel T. Chen, a director of Telenav, and a certain entity affiliated with Mr. Chen, are expected to provide debt financing in connection with the proposed transaction.
>
> The per share purchase price represents a premium of approximately 33.3 percent over Telenav's closing stock price on October 1, 2020, the last full trading day prior to announcing that the Special Committee had received a non-binding "go-private"

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

proposal from V99. Upon completion of the transaction, Telenav will become a private company with the flexibility to continue investing in its connected-car strategy.

"We are pleased to have reached this agreement with V99, which we believe will deliver immediate value to stockholders and positions Telenav to accelerate its journey towards a connected-car future with smarter, easier and safer innovation," said Douglas Miller, Lead Independent Director and a member of the Telenav Special Committee. "The transaction is the result of a thoughtful and comprehensive review of value creation opportunities available to Telenav. We are confident that this transaction is in the best interest of Telenav and all of its stakeholders, and we look forward to working with HP and V99 to complete the transaction."

"Today's announcement represents an exciting new chapter for Telenav," said HP Jin, Co-Founder, President and Chief Executive Officer. "As a private company, we will have the resources and flexibility to continue our growth and execute on our OEM-centric, connected-car strategy as the market for connected-car capabilities continues to expand. I would like to thank the Special Committee for taking the time to thoroughly evaluate and review V99's offer and Telenav's employees for their continued focus throughout this process. I am honored to continue leading Telenav through its next phase of growth and success, and I am confident Telenav will thrive as a privately held company."

**Transaction Details**

Acting upon unanimous recommendation by the Special Committee, the Telenav Board of Directors unanimously approved the merger agreement and the merger, with Messrs. Jin and Chen recusing themselves from all related discussions and abstaining from the vote. The Special Committee negotiated the terms of the merger agreement with assistance from its independent financial and legal advisors.

The agreement includes a 30-day "go-shop" period expiring on December 2, 2020, which permits the Special Committee and its advisors to solicit alternative acquisition proposals from third parties. The Special Committee will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Telenav does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

Additionally, Messrs. Jin and Chen, Changbin Wang, and each of their affiliates and related parties, have executed a voting and support agreement with the Company, pursuant to which, among other things, such parties have agreed to vote their shares of Telenav stock in accordance with the recommendation of the Special Committee or the Telenav Board of Directors with respect to the merger agreement and the merger and to otherwise support any proposal that the Special Committee or the Telenav Board of Directors receives prior to the expiration of the "go-shop" period, and determines is a superior proposal and provides an appropriate notice to V99 on or prior to December 16, 2020, including by voting or tendering their shares of Telenav stock

in accordance with the recommendation of the Special Committee or the Telenav Board of Directors, as applicable, with respect to such superior proposal.

The transaction is expected to close during the first calendar quarter of 2021, subject to customary closing conditions, including approval by Telenav stockholders, approval by Telenav stockholders holding a majority of the outstanding shares owned by stockholders other than Mr. Jin, Mr. Chen, Changbin Wang, and each of their affiliates and related parties, and receipt of regulatory approvals. Upon closing of the transaction, Telenav common stock will no longer be listed on any public market. Telenav will continue to be headquartered in Santa Clara, California.

**Insiders' Interests in the Proposed Transaction**

23. Telenav insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Telenav.

24. Notably, Telenav insiders stand to reap substantial financial benefits for securing the deal with V99. Pursuant to the Merger Agreement, all outstanding restricted stock units ("RSUs") and performance based restricted stock units ("PRSUs") will vest and convert into the right to receive the Merger Consideration. The following table summarizes the number and value of common shares, RSUs and PRSUs held by Company insiders:

| Name | Number of Shares of Common Stock Held Directly (#)(1) | Value of Shares of Common Stock Held Directly ($)(2) | Number of Shares of Common Stock Subject to Telenav RSUs Excluding Telenav PRSUs (#)(3) | Value of Shares of Common Stock Subject to Telenav RSUs Excluding Telenav PRSUs ($)(4) | Number of Shares of Common Stock Subject to Telenav PRSUs (#)(5) | Value of Shares of Common Stock Subject to Telenav PRSUs ($)(6) | Total ($)(7) |
|---|---|---|---|---|---|---|---|
| H.P. Jin | 2,358,200 | 11,319,360 | 4,583 | 21,998 | 655,000 | 3,144,000 | 14,485,358 |
| Salman Dhanani | 284,388 | 1,365,062 | 276,667 | 1,328,002 | 510,000 | 2,448,000 | 5,141,064 |
| Adeel Manzoor | 26,363 | 126,542 | 200,634 | 963,043 | 60,000 | 288,000 | 1,377,585 |
| Hassan Wahla | 87,541 | 420,197 | 122,500 | 588,000 | 240,000 | 1,152,000 | 2,160,197 |
| Steve Debenham | 24,942 | 119,722 | 174,375 | 837,000 | 30,000 | 144,000 | 1,100,722 |
| Philipp Kandal(8) | 167,815 | 805,512 | 0 | 0 | 0 | 0 | 805,512 |
| Samuel Chen(9) | 54,183 | 260,078 | 0 | 0 | 0 | 0 | 260,078 |
| Wes Cummins | 89,848 | 431,270 | 0 | 0 | 0 | 0 | 431,270 |
| Douglas Miller(10) | 70,450 | 338,160 | 0 | 0 | 0 | 0 | 338,160 |
| Randy Ortiz | 99,848 | 479,270 | 0 | 0 | 0 | 0 | 479,270 |
| Ken Xie(11) | 115,288 | 553,382 | 0 | 0 | 0 | 0 | 553,382 |
| Karen Francis(12) | 73,022 | 350,506 | 15,998 | 76,790 | 0 | 0 | 427,296 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.  Moreover, if they are terminated in connection with the Proposed Transaction, Telenav insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites / Benefits ($)(3) | Total Payments ($)(4) |
|---|---|---|---|---|
| H.P. Jin | 1,122,939 | 617,198 | 36,093 | 1,776,230 |
| Salman Dhanani | 675,800 | 1,404,802 | 24,090 | 2,104,692 |
| Adeel Manzoor | 557,134 | 963,043 | 18,442 | 1,538,619 |
| Hassan Wahla | 516,168 | 684,000 | 24,046 | 1,224,214 |
| Steve Debenham | 499,404 | 837,000 | 21,400 | 1,357,804 |

**The Proxy Statement Contains Material Misstatements or Omissions**

26.  The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Telenav's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

27.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections and the data and inputs underlying the valuation analyses that support the fairness opinion provided to the Special Committee's financial advisor B. Riley; and (ii) B. Riley's potential conflicts of interest .

*Material Omissions Concerning Telenav Management's Financial Projections and B. Riley's Financial Analyses*

28.  The Proxy Statement omits material information regarding Company management's financial projections.

29.  For example, with respect to each of the Company's "Extension Projections" and "No Extension Projections," the Proxy Statement fails to disclose (i) the cash flows Telenav was expected to generate over the projection period and each of the line items underlying the Company's cash flows; and (ii) the Company's net operating losses ("NOLs").

30. Additionally, the Proxy Statement sets forth that at the October 23, 2020, Special Committee meeting management reviewed and discussed with the Special Committee:

> the assumptions and inputs underlying the third scenario for Telenav's long-term financial projections (in addition to the "Extension Projection" and the "No Extension Projections" as further described in the section "Special Factors—Financial Projections,") that Telenav's management had modeled at the request of the Special Committee (the "Maintenance Projections"). Members of Telenav management reviewed the financial metrics underlying the Maintenance Projections, the impact that various assumptions had had on the Maintenance Projections, and the results of the analysis, including a review of the combined organic and inorganic revenue analysis for the Maintenance Projections.

Proxy Statement at 32. The Proxy Statement, however, completely omits and must disclose the "Maintenance Projections."

31. With respect to B. Riley's *Selected Companies Analysis*, the Proxy Statement fails to disclose the results of B. Riley's analysis of the estimated tax savings attributable to Telenav's NOLs.

32. With respect to B. Riley's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) why certain data was deemed not meaningful; and (ii) the results of B. Riley's analysis of the estimated tax savings attributable to Telenav's NOLs.

33. With respect to B. Riley's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) Telenav's cash flows used in the analysis; (ii) Telenav management's estimates of the impact of Telenav's NOLs; and (iii) quantification of the individual inputs and assumptions underlying the discount rates ranging from 15.5% to 20.5%.

34. With respect to B. Riley's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) each of the transactions observed in the analysis; and (ii) each of the premiums paid in the transactions.

35. With respect to B. Riley's *NOL Analysis*, the Proxy Statement fails to disclose quantification of the individual inputs and assumptions underlying the discount rates ranging from 16.5% to 19.5%.

36. Additionally, the Proxy Statement wholly omits and must disclose a fair summary of B. Riley's October 15, 2020 financial analyses, including the implied per share prices resulting from the analyses.

37. The omission of this material information renders the statements in the "Financial Projections," "Background of the Merger" and "Opinion of Financial Advisor to the Telenav Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning B. Riley's Potential Conflicts of Interest***

38. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Special Committee's financial advisor.

39. For example, the Proxy Statement sets forth:

> B. Riley acted as financial advisor to the Special Committee of Telenav in connection with the Merger and will receive a fee for such services based on the transaction value of the proposed Merger, which fee is currently estimated to be approximately $2.2 million, of which $200,000 became payable to B. Riley upon its engagement as the financial advisory to the Special Committee, $500,000 became payable to B. Riley upon the delivery of its opinion to the Special Committee and the remainder is payable to B. Riley upon the consummation of the Merger. B. Riley may become entitled to an additional fee in connection with the solicitation of third party indications of interest in acquiring Telenav following the execution of the Merger Agreement.
>
> * * *
>
> B. Riley and its affiliates in the past provided, and may in the future provide, investment banking and other financial services to Telenav and certain of its affiliates, for which B. Riley and its affiliates have received, or would expect to receive, compensation, including, during the past two years, having provided financial advisory services to Telenav in connection with contemplated acquisition opportunities as well as financing alternatives for which B. Riley and its affiliates have not received any compensation (other than reimbursement of out-of-pocket expenses), but may in the future. B. Riley and its affiliates may in the future provide investment banking and other financial services to V99 and certain of its affiliates, for which B. Riley and its affiliates would expect to receive compensation.

*Id*. at 57-58. The Proxy Statement fails, however, to disclose (i) whether B. Riley will be paid the "additional fee" in connection with its engagement and the amount of such fee; (ii) the fees B. Riley

and its affiliates expect to receive for having provided financial advisory services to Telenav in connection with contemplated acquisition opportunities as well as financing alternatives; and (iii) whether B. Riley has provided past services to V99 or its affiliates.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. The omission of this material information renders the statements in the "Opinion of Financial Advisor to the Telenav Special Committee" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Telenav will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company management's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by B. Riley and B. Riley' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of Telenav within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Telenav, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Telenav's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Telenav, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Telenav stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: January 21, 2021 | **WEISSLAW LLP** <br> Joel E. Elkins <br><br> By: */s/ Joel E. Elkins* <br><br> Joel E. Elkins <br> 9100 Wilshire Blvd. #725 E. <br> Beverly Hills, CA 90210 <br> Telephone: 310/208-2800 <br> Facsimile: 310/209-2348 <br>         -and- <br> Richard A. Acocelli <br> 1500 Broadway, 16th Floor <br> New York, NY 10036 <br> Telephone: 212/682-3025 <br> Facsimile: 212/682-3010 <br><br> *Attorneys for Plaintiff* |

- 16 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS